**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------

RYAN O'DELL,                                    :
                                                :
      Plaintiff,                            :   Civil Action No. 23-cv-329
                                                :
v.                                              :   **COMPLAINT FOR VIOLATIONS OF**
                                                :   **SECTIONS 14(a) AND 20(a) OF THE**
COUPA SOFTWARE INCORPORATED,                    :   **SECURITIES EXCHANGE ACT OF**
ROBERT BERNSHTEYN, KANIKA SONI,                 :   **1934**
FRANK VAN VEENENDAAL, MICHELLE                  :
BRENNAN, SCOTT THOMPSON, ROGER                  :   **JURY TRIAL DEMANDED**
SIBONI, and TAYLOE STANSBURY,                   :
                                                :
      Defendants.                            :
                                                :
--------------------------------------------------------  :
                                                :

      Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

      1.     This is an action brought by Plaintiff against Coupa Software Incorporated ("Coupa

or the "Company") and the members Coupa's board of directors (the "Board" or the "Individual

Defendants" and collectively with the Company, the "Defendants") for their violations of Sections

14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a),

78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the

proposed acquisition of Coupa by affiliates of Thoma Bravo, L.P. ("Thoma Bravo").

      2.     Defendants have violated the above-referenced sections of the Exchange Act by

causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on January 11, 2023 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders.  The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Project CS Merger Sub, Inc. ("Merger Sub"), a wholly-owned subsidiary of Coupa Holdings, LLC ("Parent"), will merge with and into Coupa with Coupa surviving as a wholly-owned subsidiary of Parent (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on December 11, 2022 (the "Merger Agreement"), each Coupa stockholder will receive $81.00 in cash for each Coupa share owned (the "Merger Consideration"). Merger Sub and Parent are each affiliated with Thoma Bravo Fund XV, L.P. ("Thoma Bravo Fund"), and Parent, Merger Sub, and Thoma Bravo Fund are each affiliated with Thoma Bravo.

3.      As discussed below, Defendants have asked Coupa's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Qatalyst Partners LP ("Qatalyst") in support of its fairness opinion.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Coupa's stockholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because plaintiff resides in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Coupa stocks and has held such stocks since prior to the wrongs complained of herein.

10.     Individual Defendant Robert Bernshteyn has served as a member of the Board since February 2009 and is the Company's Chief Executive Officer and the Chairman of the Board.

11.     Individual Defendant Kanika Soni has served as a member of the Board since June 2022.

12.     Individual Defendant Frank van Veenendaal has served as a member of the Board since December 2015.

13.     Individual Defendant Michelle Brennan has served as a member of the Board since October 2020.

14.     Individual Defendant Scott Thompson has served as a member of the Board since May 2013.

15.      Individual Defendant Roger Siboni has served as a member of the Board since September 2014.

16.     Individual Defendant Tayloe Stansbury has served as a member of the Board since December 2015.

17.     Defendant Coupa is a Delaware corporation and maintains its principal offices at 1855 S. Grant Street, San Mateo, CA 94402. The Company's stock trades on the NASDAQ Global Select under the symbol "COUP."

18.     The defendants identified in paragraphs 10-16 are collectively referred to as the "Individual Defendants" or the "Board."

19.     The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.     The Proposed Transaction

20.     Coupa provides cloud-based business spend management platform that connects its customers with suppliers worldwide. The Company provides visibility into and control over how companies spend money, optimize supply chains, and manage liquidity, as well as enables businesses to achieve savings that drive profitability. Its platform offers procurement, invoicing, expense management, and payment solutions that form the transactional engine for managing a company's business spend; and specialized solutions, including strategic sourcing, contract management, contingent workforce, supplier risk management, supply chain design and planning, treasury management, and spend analysis. It serves businesses in various industries, including healthcare and pharmaceuticals, retail, financial services, manufacturing, and technology. The

Company markets its platform primarily through a direct sales force. Coupa was incorporated in

2006 and is headquartered in San Mateo, California.

21.    On December 12, 2022, the Company announced the Proposed Transaction:

SAN MATEO, Calif., Dec. 12, 2022 /PRNewswire/ -- Coupa
Software (NASDAQ: COUP), a leader in Business Spend
Management (BSM), today announced that it has entered into a
definitive agreement to be acquired by Thoma Bravo, a leading
software investment firm. This is an all-cash transaction with an
enterprise value of $8.0 billion. Upon completion of the transaction,
Coupa will become a privately held company.

The transaction includes a significant minority investment from a
wholly owned subsidiary of the Abu Dhabi Investment Authority
(ADIA). Under the terms of the agreement, Coupa shareholders will
receive $81.00 per share in cash, which represents a 77% premium
to Coupa's closing stock price on November 22, 2022, the last full
trading day prior to media reports regarding a possible sale
transaction involving the company. The transaction consideration
also represents a premium of approximately 64% to the volume
weighted average closing price of Coupa stock for the 30 trading
days ending on November 22, 2022.

"For more than a decade, we've been building an incredible
Business Spend Management Community and have proudly
cemented our position as the market-leading platform in our
category. We're looking forward to partnering with Thoma Bravo
and accelerating our vision to digitally transform the Office of the
CFO," said Rob Bernshteyn, chairman and chief executive officer at
Coupa. "While our ownership may change, our values do not. Every
one of us at Coupa will continue to put our customers at the center
of everything we do and help them maximize the value of every
dollar they spend."

"This transaction is the result of a deliberate and thoughtful process
that included engagement with both strategic and financial parties,"
said Roger Siboni, Coupa's lead independent director. "The Board
evaluated the transaction against the company's standalone
prospects in the current macroeconomic climate and determined that
the compelling and certain cash consideration in the transaction
provides superior risk-adjusted value relative to the Company's
standalone prospects. The Board is unanimous in its belief this
transaction is the optimal path forward and in the best interest of our
shareholders."

"Coupa has created and led the large and growing Business Spend Management category. We've followed the company's success for many years and have been impressed by its consistent track record of delivering high levels of value for its global customer base," said Holden Spaht, a Managing Partner at Thoma Bravo. "We look forward to partnering with Rob and the rest of the management team to keep investing in the company's product strategy while driving growth both organically and through M&A."

"We couldn't be more excited to partner with the talented Coupa team to keep building on the incredible franchise they've created in the Business Spend Management space," said Brian Jaffee, a Partner at Thoma Bravo. "Our shared vision, combined with Thoma Bravo's strategic and operational expertise, will enable Coupa to continue driving innovation, better serve its customers and accelerate important growth initiatives during this next chapter as a private company."

**Approvals and Timing**

The transaction, which was approved unanimously by the Coupa Board of Directors, is expected to close in the first half of 2023, subject to customary closing conditions, including approval by Coupa shareholders and the receipt of required regulatory approvals. The transaction is not subject to a financing condition.

Upon completion of the transaction, Coupa's common stock will no longer be listed on any public market. The company will continue to operate under the Coupa name and brand.

\* \* \*

**Advisors**

Qatalyst Partners LP is serving as financial advisor to Coupa and Freshfields Bruckhaus Deringer LLP is serving as the company's legal advisor.

Goldman Sachs & Co. LLC and Piper Sandler acted as financial advisors and Kirkland & Ellis LLP acted as legal advisor to Thoma Bravo.

\* \* \*

22.     The Board has unanimously agreed to the Proposed Transaction.  It is therefore

imperative that Coupa's stockholders are provided with the material information that has been

omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.      The Materially Incomplete and Misleading Proxy Statement**

23.     On January 11, 2023, Coupa filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

24.     The Proxy Statement fails to provide material information concerning financial projections by Coupa management and relied upon by Qatalyst in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Qatalyst with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Coupa management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside

view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

25.     For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Non-GAAP Operating Income, Unlevered Free Cash Flow, and Adjusted Free Cash, but fails to provide line items used to calculate the metrics or a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

26.     When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

27.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other

non-discretionary expenditures that are not deducted from the measure.[1]

28.     Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

29.     With respect to Qatalyst's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the terminal value of the Company; (ii) the inputs and assumptions underlying the use of the range discount rates of 9.5% to 13.0%; (iii) the inputs and assumptions underlying the next-twelve-months' estimated UFCF multiples of 20.0x to 32.0x; (iv) the cash and cash equivalents of the Company as of October 31, 2022; (v) the estimated federal tax savings due to its net operating losses for the fiscal years 2028 and beyond; (vi) the face value of the outstanding Convertible Notes as of October 31, 2022, and the Company's redeemable non-controlling interests in Coupa K.K., as of October 31, 2022; and (vii) the number of fully diluted shares of Coupa common stock outstanding as of October 31, 2022.

30.     With respect to Qatalyst's *Selected Companies Analysis*, the Proxy Statement fails to disclose the financial metrics for each company selected for the analysis.

31.     With respect to Qatalyst's *Selected Transactions Analysis*, the Proxy Statement fails to disclose the financial metrics for each transaction selected for the analysis., including: (i) the transaction value; (ii) the last-twelve-months' revenue of each target company; and (iii) the implied fully diluted enterprise value of each target company.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

32.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**COUNT I**

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

33.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

34.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

35.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

36.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

37.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

38.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

39.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40.     The Individual Defendants acted as controlling persons of Coupa within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Coupa, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Coupa, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

41.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

42.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Coupa, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

43.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

44.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

45.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

46.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: January 13, 2023                    **MELWANI & CHAN LLP**

By:  */s/ Gloria Kui Melwani*
Gloria Kui Melwani (GM5661)
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*

14